# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 07-21 (JRT/RLE) |
| | Civil No. 09-3710 (JRT) |
| Plaintiff/Respondent, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION** |
| NAKIA LASHAWN HARRIS, | |
| Defendant/Petitioner. | |

Tracy Perzel, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff/respondent.

Nakia Lashawn Harris, #13178-041, USP- Leavenworth, Post Office Box 1000, Leavenworth, KS 66048, defendant/petitioner *pro se*.

Nakia Lashawn Harris pleaded guilty to conspiracy to distribute more than 500 grams of methamphetamine, and the Court sentenced him to 120 months imprisonment. This matter is before the Court on defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Docket No. 108.) Harris argues that he received ineffective assistance of counsel because his attorney failed to challenge the drug quantities set forth in the plea agreement and the Presentence Investigation Report, and because the two-level enhancement for possession of a firearm was unlawful. For the reasons stated below, the Court denies the motion and declines to issue a certificate of appealability.

## BACKGROUND

On November 17, 2006, Nakia Harris was charged by criminal complaint with possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Criminal Compl. at 1, Docket No. 1.) On November 20, 2006, Magistrate Judge Susan R. Nelson held a detention hearing, and Bob Miller appeared as retained counsel for Harris. (Docket No. 2.) On January 10, 2007, Magistrate Judge Franklin L. Noel held a hearing on Harris's motion for dismissal of Miller, granted the motion, and, pursuant to the Criminal Justice Act, ordered that the Office of the Federal Defender provide a public defender to represent Harris. (Docket No. 14.) Later that day, the Office of the Federal Defender filed a notice of appearance naming Robert Owens as appointed counsel of record. (Docket No. 15.) Count one of the superseding indictment charged Harris with possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and count two charged Harris with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Superseding Indictment, Docket No. 43.)

In a hearing on October 18, 2007, Harris, represented by Owens, pleaded guilty to count two of the superseding indictment, and the Court requested that the United States Probation Office prepare a Presentence Investigation and Report ("PSI Report"). (Docket No. 69.) After receiving the PSI Report, Harris filed a *pro se* motion to withdraw his plea. (Docket No. 74.) On January 18, 2008, the Court held a hearing and granted the motion, and also granted Harris's oral motion for appointment of new counsel. (Docket No. 76.) On January 24, 2008, the Office of the Federal Defender filed a notice of appearance naming Leon Trawick as appointed counsel of record. (Docket No. 78.)

Trawick "has been a criminal defense attorney working in both the state and federal courts in Minnesota for more than 36 years and has handled the defense of hundreds of criminal cases." (Trawick Aff. ¶ 1, Gov't's Resp. in Opp'n to Pet'r's Mot., Ex. 2, Docket No. 112.)

In an affidavit filed with the Court on February 19, 2010, Trawick states that he "had multiple in-person and phone conversations with [Harris] concerning the facts of the case, and specifically explained that [Trawick] had reviewed the discovery that had been provided to him directly or through prior counsel." (*Id.* ¶ 5.) Trawick explains:

> The United States' evidence – including statements made by [Harris] to law enforcement – revealed that the defendant was involved in a conspiracy to distribute more than 500 grams of methamphetamine and had personal involvement with approximately two and one-half pounds of methamphetamine (the equivalent to approximately 1,134 grams of methamphetamine).

(*Id.*) Trawick therefore "recommended that [Harris] enter a plea of guilty, as he had previously, if the United States was willing to provide the same proposed plea agreement." (*Id.* ¶ 7.) Based on Trawick's review of the discovery at the time, Trawick concluded that "the drug quantity calculation contained within the plea agreement – approximately 1134 grams of methamphetamine (equivalent to two and one-half pounds) – was consistent with the evidence" and with Owens' statements to Trawick. (*Id.* ¶ 8.)

In a hearing on May 8, 2008, Harris, represented by Trawick, pleaded guilty to count two of the superseding indictment. (Docket Nos. 87, 102.) The Court placed Harris under oath, informed him that he could speak with Trawick in private at any time during the hearing, and assessed Harris's competency to plead guilty. (May 8, 2008, Hr'g Tr. at 3-10, Docket No. 102.) Harris testified that he had read the superseding

indictment, and he informed the Court that "[his] counsel, Mr. Trawick, has adequately discussed the counts that I've been indicted with[.]" (*Id.* at 10.) The Court then inquired:

> The Court: And you've had enough time to have him answer your questions and talk about the case?
>
> [Harris]: Yes, Your Honor. He's pretty much always available and been an available resource.
>
> The Court: So you've been satisfied with the advice and assistance he's provided to you?
>
> [Harris]: That's correct, Your Honor.

(*Id.*) Later in the hearing, he testified that he had had the opportunity to meet with Trawick approximately seven times, and that they had spoken over the phone and had "gone over a lot of material." (*Id.* at 15.)

Counsel for the government then questioned Harris. Harris admitted that in 2006 he became involved with a group of individuals who were trafficking in controlled substances. (*Id.* at 10.) Among those individuals were Glen Forehand, Anthony Jantz, and Jeremy Berndt. (*Id.* at 11.) Harris admitted that his role was "to distribute some drugs for Mr. Forehand and also to take over the keeping track of the business of the drug distribution." (*Id.* at 12.) He admitted that at the time of his arrest, his vehicle contained a "detailed drug ledger addressing the operations of Mr. Forehand's group and then a loaded handgun." (*Id.* at 13.) He admitted that he "had grown to know what [the group] w[as] doing" with respect to operating a drug trafficking organization and that after he had that knowledge, he "agreed to become involved with them." (*Id.*) Counsel then asked:

> [Counsel]: In terms of the quantity that you're agreeing to you're responsible for for this group, it's two and a half pounds of methamphetamines; is that true?

| [Harris]: | That's correct, [counsel]. |
|---|---|
| [Counsel]: | And in terms of the firearm, you're agreeing that the firearm was possessed in furtherance of that drug trafficking crime; is that also true? |
| [Harris]: | Yes, [counsel]. |

(*Id.* at 13-14.) He further admitted that the purpose of his involvement with the group was to assist the group in drug trafficking. (*Id.* at 15.) The Court then inquired about the drug quantities:

| The Court: | Is there any dispute about drug quantities in this case? |
|---|---|
| [Trawick]: | I don't think so, Your Honor. |
| The Court: | I think the plea agreement states responsibility for at least two and a half pounds of methamphetamines. And will there be any objection to that amount? |
| [Trawick]: | I don't think so, Your Honor. Everything I found, the data that I found collectively – there may be an argument at another point in time, as far as [allocation] of that portion, but the conspiracy, itself, I believe we're pretty clear it was in excess of 500 grams. |

(*Id.* at 16.) Counsel for the government added that the plea agreement Harris was signing indicated that he agreed that he had responsibility for at least 500 grams of methamphetamine. (*Id.*)

The Court then informed Harris of its preliminary calculation of the guideline range for sentencing. (*Id.* at 18-19.) The Court informed Harris that the "ten-year mandatory minimum comes into play here, too. It doesn't look like there's a way for The Court to sentence beneath the mandatory minimum." (*Id.* at 19.) Harris stated that he understood this sentencing information.[1] (*Id.*) The Court then asked Harris whether

---

[1] Harris concedes that his sentence of 120 months was "the minimum sentence allowed" for count two. (Mot. Pursuant to 28 U.S.C. § 2255 at 4, Docket No. 108.)

- 5 -

there was "anything about the plea agreement that you don't understand?" (*Id.* at 20.) Harris responded, "No, Your Honor. I understand all of it." (*Id.* at 21.) The Court then informed Harris of the rights he was waiving by agreeing to plead guilty, including his right to challenge the evidence against him:

> You have the right to challenge the evidence that the Government has in this case and would be prepared to introduce and use against you during the trial. But when you plead guilty, then that evidence will be used to support your conviction. And you can't challenge it at a later time. And by challenge it, I mean challenge as to whether it was collected improperly or would be otherwise inadmissible in court as evidence used to support your guilt.

(*Id.* at 22.) Harris confirmed that he understood that by entering a plea of guilty he was waiving his rights. (*Id.* at 25.)

Before the Court accepted the change of plea, counsel for the government questioned Harris about his previous withdrawal of his guilty plea:

| | |
|---|---|
| [Counsel]: | Mr. Harris, we were here sometime ago, . . . and you had withdrawn your not guilty plea. Do you remember that day? |
| [Harris]: | Yes, [counsel]. |
| [Counsel]: | And now you're standing here pleading guilty under substantially the same plea agreement; is that correct? |
| [Harris]: | Yes. |
| [Counsel]: | Today are you feeling better about the plea? Do you feel you've had enough time to talk with Mr. Trawick? |
| [Harris]: | Yes, I do. |
| [Counsel]: | And is it your desire to have The Court today accept your plea of guilty and move this matter along to the point of sentencing? |
| [Harris]: | Yes, I'm in compliance with that, [counsel]. |

(*Id.* at 25-26.)

Harris then pleaded guilty to count two. (*Id.* at 26.) The Court found that Harris was

> fully competent; he is capable of entering an informed plea to this charge. The Court finds that based on the record of the hearing today that Mr. Harris is not only aware of the nature of the charges, but that he understands the consequences of the guilty plea, that matter having been thoroughly reviewed at the hearing today. The Court finds further that the plea of guilty today is voluntary and it is knowing, and it is supported by an independent basis, in fact, stating each of the essential elements of the charge in Count 2, conspiracy to distribute methamphetamine. The Court, therefore, will accept the plea.

(*Id.* at 27.) The Court then informed Harris that it would refer Harris to the United States Probation Office for the completion of a PSI Report. (*Id.*) The Court informed Harris that "[i]f there's anything in there that you object to, Mr. Trawick will have the opportunity to try to work that out with the probation officer. Any issue that's not resolved will be taken up by The Court at sentencing." (*Id.* at 27-28.) The Court also informed Harris that he would have the right to speak at sentencing. (*Id.* at 28.) Harris then signed the plea agreement. (*Id.*)

Trawick received the PSI Report and reviewed it personally with Harris. (Trawick Aff. ¶ 10, Gov't's Resp. in Opp'n to Pet'r's Mot., Ex. 2, Docket No. 112.) According to Trawick, "the drug quantity calculation [in the PSI Report] (at least 500 grams but not more than 1,500 grams of methamphetamine) was consistent with [Trawick's] review of the discovery." (*Id.*) When Trawick met with Harris to review the PSI Report, Harris "indicated no desire to challenge the drug quantity calculation." (*Id.*) Trawick states that Harris had "never asserted to [Trawick] that he lacked responsibility for at least 500 grams of methamphetamine." (*Id.* ¶ 13.) Trawick states that if there had been "any question concerning [Harris's] responsibility for at least 500 grams of

methamphetamine," Trawick would have contested the issue. (*Id.* ¶ 12.) Trawick "did not pursue this course of action in [Harris's] case, because there was no reasonable question concerning the assigned drug quantity." (*Id.*)

On June 20, 2008, the Court sentenced Harris to 120 months imprisonment on count two of the superseding indictment. (Docket No. 93.) Trawick represented Harris at the sentencing hearing. (June 20, 2008, Hr'g Tr. at 1, Docket No. 99.) Neither Trawick nor counsel for the government had any objections to the PSI Report, including the drug quantity calculations, and therefore the Court adopted the factual statements presented in the report as the Court's findings of fact for sentencing. (*Id.* at 3.) The Court calculated the applicable guideline range as 135 to 168 months, and noted that "there is a 120-month mandatory minimum sentence." (*Id.* at 3-4.) Trawick requested that the Court sentence Harris "to the mandatory minimum of ten years," representing a minor downward variance from the applicable guideline range. (*Id.* at 4-5.) Harris then spoke:

> Your Honor, I would just like to address the Court and just say that my role in this whole thing, it's not what it may appear to be. . . . I wasn't the big person, . . . the person that was up on the ladder that was making deals or calling the shots.
>
> I – I'm not standing here, Your Honor, and saying that I'm not innocent because I am guilty. . . .
>
> . . . . I'm guilty of the conspiracy without a doubt. I was around people I shouldn't have been around, Your Honor, but just some of the things that are alleged, Your Honor, I'm not comfortable with, but I'm here to accept my responsibility and my punishment.
>
> I just wish that the Court would view the factual circumstances of those actions.

(*Id.* at 7.) In his statement to the Court prior to sentencing, Harris did not make any reference to the PSI Report or to the drug quantities alleged therein. The Court and

Trawick then confirmed on the record that Harris had fully accepted responsibility for his role in the conspiracy.  (*Id.* at 7-8.)

The Court sentenced Harris to the mandatory minimum sentence of 120 months, concluding that the sentence was "fair and reasonable," and adding that the Court has "no authority to go beneath the 120 months because it is the mandatory minimum."  (*Id.* at 9.) The Court stated that the sentence was "the kind of sentence that [Harris] would have received even if there had not been a mandatory minimum in the case."  (*Id.*)  The Court then granted the government's motion to dismiss count one.  (*Id.* at 12.)  The Court signed and filed an amended judgment on July 7, 2008.  (Docket No. 94.)

On July 8, 2008, Harris filed a *pro se* motion for appointment of new counsel with the United States Court of Appeals for the Eighth Circuit and a *pro se* notice of appeal with this Court.  (Docket Nos. 95-96.)  The motion for appointment of new counsel stated that there had "been a breakdown" between Harris and Trawick because Trawick did not seek to file an "appeal on points for [Harris's] sentencing."  (Mot. for Appointment of New Counsel at 1, Docket No. 96.)

Harris appealed his conviction and sentence.  Trawick represented Harris on appeal, but also filed a motion with the Eighth Circuit to withdraw as counsel.  *United States v. Harris*, 347 Fed. Appx. 256, 256 (8th Cir. 2009).  On appeal, Harris and Trawick argued that Harris's sentence was unreasonable, that the district court improperly denied a motion to suppress, and that Harris was denied his right to a speedy trial.  *Id.*  With respect to the first argument, the court concluded that Harris's sentence was not unreasonable, noting that it was below the sentencing guidelines and was the statutory mandatory minimum.  *Id.*  The court found that Harris had waived his right to appeal on

the second and third issues by pleading guilty unconditionally. *Id.* The court also granted Trawick's motion to withdraw. *Id.* On October 26, 2009, the Court issued its mandate. (Docket No. 106.) Harris did not file a petition for certiorari in the United States Supreme Court. (Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence at 2, Docket No. 107.)

On December 28, 2009, Harris timely filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Docket No. 107.) In that motion, Harris requests to withdraw his guilty plea. (*Id.* at 12.) Harris makes two arguments in support of his § 2255 motion. First, he argues that Trawick provided ineffective assistance of counsel by "allow[ing] Harris to plead guilty to count two (2) of the indictment, without first investigating and insuring the Government could prove all the elements outlined in the indictment." (Mot. Pursuant to 28 U.S.C. § 2255 at 2, Docket No. 108.) Specifically, Harris objects to Trawick's alleged failure to contest the drug quantities contained in the plea agreement:

> [Trawick] relied upon the Government's estimate of how much Methamphetamine was distributed through[]out the course of this conspiracy, and therefore Counsel was ineffective for allowing Harris to plead guilty to count two of the indictment.
>
> No drugs were ever seized from Harris throughout the course of this conspiracy, and less than two ounces of Methamphetamine were seized from cooperating witnesses in this case.
>
> . . . [A]t no time during these court procedures did Mr. Trawick ever challenge[] any of the drug amounts associated with [the] case, and whereas no drugs were ever seized from Harris, therefore drug amounts played a critical factor in this case.
>
> However, the Government, along with Mr. Trawick, relied strictly upon statements that were made by cooperating witnesses in the secrecy of Federal and State agents. Those drug[] amounts should have been questioned and challenged by Mr. Trawick, in that, Harris argues his total drug amount should have been less than 500 grams, which would trigger a

minimum and maximum sentence of 5 to 40 years in prison. Harris contends, the Government never established a time frame of when Harris allegedly entered or exited this conspiracy, but attributed all known drugs to Harris.

(*Id.* at 7-8.) Harris argues that he "repeatedly informed Mr. Trawick on several occasions[] that he had only dealt with Glen Forehand, Anthony [Jantz] and Jeremy [Berndt] on limited occasions, and never in excess of 500 grams." (*Id.* at 10.) According to Harris, "had Mr. Trawick objected and challenged the drug amount, the Courts would have concluded Harris was responsible for a much smaller quantity than 500 grams." (*Id.* at 9.) Harris argues that the parties and the Court, in accepting Harris's guilty plea, violated Rule 11(c) of the Federal Rules of Criminal Procedure, the rule governing the procedure for plea agreements. (*Id.* at 5.) Harris also argues that the parties and the Court violated Rule 11(f), governing the admissibility of a plea. (*Id.*) Therefore, Harris argues, he should be able to withdraw his previous plea and enter a new plea. (*Id.* at 9-10.)

Second, Harris argues in passing[2] that "he was illegally enhanced two (2) levels; for possession of a firearm under U.S.S.G. [§] 2D1.1(b)(1), in which Harris never pled guilty, or was found guilty by a jury involving any firearms." (*Id.* at 2.)

Harris also requested an evidentiary hearing on his § 2255 motion and requested appointment of counsel for the hearing. (*Id.* at 3.)

---

[2] The introduction to Harris's memorandum in support of his § 2255 motion suggests that Harris is raising two arguments in support of his § 2255 motion. The brief identifies "Issue # 1" as "Counsel was ineffective for allowing Harris to plead guilty without first challenging the drug amounts," but it does not identify or label any argument as "Issue # 2."

# ANALYSIS

## I. MOTION PURSUANT TO 28 U.S.C. § 2255

Section 2255 provides persons in federal custody a limited opportunity to collaterally attack the constitutionality or legality of the sentence and conviction prescribed by the Court. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979); *Embrey v. Hershberger*, 131 F.3d 739, 740 (8th Cir. 1997). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

### A. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim,[3] Harris "must show that (1) h[is] trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence; and (2) the deficient performance prejudiced [his] defense." *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Under the first element, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." *Toledo*, 581 F.3d at 680 (internal quotation marks omitted). If the first element is satisfied, "the second element of prejudice requires a reasonable probability that, but for a counsel's

---

[3] Harris's claim that he received ineffective assistance of counsel is properly raised in a § 2255 motion. *United States v. Summage*, 575 F.3d 864, 878 n.5 (8th Cir. 2009).

unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

As an initial matter, the Court concludes that Harris misapprehends the basis for a conviction for conspiracy to distribute a particular quantity of methamphetamine. Harris concedes that "[t]he facts of this case establish[] [that] prior to August 1, 2006, Harris entered into an ongoing conspiracy to distribute Methamphetamine" with several co-conspirators, including Glen Forehand. (Mot. Pursuant to 28 U.S.C. § 2255 at 6, Docket No. 108.) He further concedes that "[s]ometime around August 1, 2006, Harris began to participate in this conspiracy and would deliver Methamphetamine and other drugs to various individuals, who would later then distribute those drugs to others." (*Id.*)

"[F]or § 841(b) purposes, a defendant is accountable for drugs possessed by his co-conspirators if they acted in furtherance of the conspiracy and their activities were known or reasonably foreseeable to the defendant." *United States v. Spotted Elk*, 548 F.3d 641, 674 n.12 (8th Cir. 2008); *see also United States v. Brown*, 560 F.3d 754, 768 (8th Cir. 2009) (approving a jury instruction stating that the drug quantities applicable to a defendant convicted of conspiracy to distribute a controlled substance include all quantities that the defendant "possessed for personal use or distribution," as well as "any amounts that fellow conspirators distributed or agreed to distribute, if . . . those distributions or agreements to distribute were a necessary or natural consequence of the agreement . . . and were reasonably foreseeable by the defendant" (internal quotation marks omitted; second alteration in original)). In determining the applicable drug quantity, the Court may therefore consider "drug transactions in which [Harris] may not have been directly involved." *United States v. Atkins*, 250 F.3d 1203, 1212 (8th Cir.

2001). For example, the Court sentenced Forehand to 210 months imprisonment based on a PSI Report that concluded that he was responsible for conspiracy to distribute and possession with intent to distribute at least 5000 grams of methamphetamine.[4] (Perzel Aff. ¶¶ 2, 5-6, Gov't's Resp. in Opp'n to Pet'r's Mot., Ex. 3, Docket No. 112.)

In his plea colloquy, Harris stated under oath that his role in the conspiracy was to distribute drugs for Forehand and to keep track of the business of drug distribution. (May 8, 2008, Hr'g Tr. at 12, Docket No. 102.) He confirmed that he had become aware that the purpose of Forehand's group was to operate a drug trafficking organization and that he agreed to become involved with the group after he was aware of the group's purpose. (*Id.* at 13.) He confirmed that his vehicle contained a detailed drug ledger addressing the operations of Forehand's group. (*Id.*) He stated that the purpose of his involvement with the group was to assist them in drug trafficking. (*Id.* at 15.) Because of the nature of the crime of conspiracy, it is irrelevant, for purposes of determining the drug quantity attributable to Harris on count two, whether law enforcement officials ever seized any drugs from Harris himself.

With respect to the first prong of the ineffective assistance of counsel analysis, the Court finds that Trawick's performance was not deficient and that it fully satisfied an objective standard of reasonable competence. Trawick independently reviewed the

---

[4] The Court cannot automatically presume that the drug quantity attributable to Forehand is attributable to Harris. *See United States v. Darden*, 70 F.3d 1507, 1552 (8th Cir. 1995). The Court did not do so. The drug quantity in Harris's plea agreement and PSI Report is approximately one-fourth of the drug quantity in Forehand's plea agreement and PSI Report, demonstrating that Harris's plea agreement and PSI Report contain "an individualized assessment of the quantity of drugs reasonably foreseeable to [Harris] given [his] involvement in the drug enterprise." *Cf. id.* Contrary to Harris's argument, the government did not "attribute[] all known drugs to Harris." (Mot. Pursuant to 28 U.S.C. § 2255 at 8, Docket No. 108.)

discovery in the case and concluded that the evidence, including statements Harris had made to law enforcement, revealed that Harris was involved in a conspiracy to distribute more than 500 grams of methamphetamine and that he had personal involvement with approximately 1,134 grams of methamphetamine. As a result of the plea agreement, the Court adjusted Harris's offense level downward by three points for acceptance of responsibility. (June 20, 2008, Hr'g Tr. at 3, Docket No. 99.) If Trawick had objected to the drug quantity in the plea agreement and the PSI Report, Harris would have faced a higher offense level and a higher sentencing guidelines range. Trawick's decision not to contest the drug quantity was well within the realm of professional reasonableness. *See United States v. Flynn*, 87 F. 3d 996, 1001 (8th Cir. 1996). Harris has failed to overcome the "strong presumption that [Trawick's] conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, even assuming that Trawick's performance does not satisfy the objective standard of reasonable competence, there is no reasonable probability that Harris's sentence would have been lower if Trawick had objected to the drug amount. Harris concedes that he participated in an ongoing conspiracy to distribute methamphetamine. The Court found that three of his co-conspirators were responsible for at least 5000 grams of methamphetamine. (Perzel Aff. ¶¶ 5, Gov't's Resp. in Opp'n to Pet'r's Mot., Ex. 3, Docket No. 112.) They pleaded guilty to conspiracy to distribute and possession with intent to distribute in excess of 500 grams of methamphetamine. *United States v. Forehand*, No. 06-cr-164, Docket Nos. 208 (Berndt), 209 (Jantz), 213 (Forehand) (D. Minn. Feb. 7, 2008) (Ericksen, J.). The Court sentenced them to between 146 and 210 months, and they did not appeal their sentences or convictions. Harris was aware of

the conspiracy and conceded under oath that he assisted the conspiracy in trafficking drugs. He concedes in his memorandum in support of his § 2255 motion that he "dealt with" Forehand, Jantz, and Berndt and that Harris "deliver[ed] Methamphetamine and other drugs to various individuals" as part of his participation in the conspiracy. (Mot. Pursuant to 28 U.S.C. § 2255 at 6, 10, Docket No. 108.) Trawick, after reviewing all of the available evidence, concluded that "there was no reasonable question concerning the assigned drug quantity." (Trawick Aff. ¶ 12, Gov't's Resp. in Opp'n to Pet'r's Mot., Ex. 2, Docket No. 112.) There was a factual basis to support the conclusion that Harris was personally responsible for at least 500 grams of methamphetamine, and any objection to the stated drug quantities likely would have rendered Harris ineligible for the full three-point downward adjustment of the offense level for acceptance of responsibility. As a result, Harris has failed to establish that there is a reasonable probability that any objection to the drug quantity would have resulted in a lower sentence.[5]

### B. Sentencing Enhancement for Possession of a Firearm

Harris argues that the Court should not have applied a two-level enhancement at sentencing for the possession of a firearm because "Harris never pled guilty" to possession of a firearm and "was [never] found guilty by a jury involving any firearms."

---

[5] The Eighth Circuit recently suggested in an unpublished disposition that even where a defendant alleges ineffective assistance of counsel, the defendant "cannot challenge the drug quantity used for sentencing because he stipulated to the amount in his plea agreement." *United States v. Alarcon*, 320 Fed. Appx. 478, 479 (8th Cir. 2009). It is unclear, however, whether the defendant in that case had argued ineffective assistance of counsel with respect to failure to object to the drug quantity in the plea agreement. Therefore, the Court does not rely on that disposition in considering Harris's § 2255 motion.

(Mot. Pursuant to 28 U.S.C. § 2255 at 2, Docket No. 108.) When Harris challenged the reasonableness of his sentence on direct appeal, he did not contest the firearm enhancement. *See Harris*, 2009 WL 3170307, at *1. Harris has therefore procedurally defaulted on this claim, and he has failed to show cause that excuses the default and actual prejudice from the errors asserted. *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997). The Court therefore will not consider this argument.[6]

## II.   CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam). The Court finds it is unlikely that some other court would decide the issues raised in Harris's § 2255 petition differently, or that any of the issues raised would be debatable among reasonable jurists. Harris has therefore failed to

---

[6] Even if the Court were to reach the issue, Harris's claim would fail. "Under an advisory sentencing regime, the district court is entitled to determine sentences based upon judge-found facts and uncharged conduct where the defendant is not sentenced in excess of the statutory maximum." *United States v. Cruz-Zuniga*, 571 F.3d 721, 726 (8th Cir. 2009) (internal quotation marks omitted). "[S]entencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence." *Id.* (internal quotation marks omitted; alteration in original). In accepting the plea agreement, Harris agreed that at the time of his arrest, his vehicle contained a loaded handgun and that the handgun was possessed in furtherance of the drug trafficking crime. The Court did not sentence Harris in excess of the statutory maximum, and Harris's statements are sufficient to establish by a preponderance of the evidence that the two-level upward adjustment was warranted.

make the required substantial showing of a denial of a constitutional right, and the Court denies a certificate of appealability in this matter.

**ORDER**

Based on the foregoing, and all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No.107] is **DENIED**.

2. Defendant's request for appointment of counsel and request for a hearing on the motion [Docket No. 108] are **DENIED as moot**.

3. The Court does not certify for appeal under 28 U.S.C. § 2253(c)(1)(B) the issues raised in defendant's motion.

The Clerk of Court is respectfully **DIRECTED** to mail a copy of this Order to defendant.

DATED: April 20, 2010             _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.             JOHN R. TUNHEIM
                                                       United States District Judge